In re Morris Wayne **RILEY**, Debtor.

**MORREL, WEST & SAFFA, INC.,** an Oklahoma corporation and George Spencer & Associates, P.C., an Oklahoma corporation, Plaintiffs,

v.

Morris Wayne **RILEY**, Defendant.

Bankruptcy No. 90–03109–C.
Adv. No. 91–0058–C.

United States Bankruptcy Court,
N.D. Oklahoma.

July 9, 1991.

Cynthia J. Braly, Tulsa, Okl., for plaintiffs.

Richard K. Holmes, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

### Statement of Facts

Morris Wayne Riley ("Debtor") filed for Chapter 7 bankruptcy relief on October 16, 1990. On this day he filed his schedules of assets and liabilities and a Statement of Affairs For a Debtor Not Engaged in Business. On December 7, 1990, he filed an Amended Statement of Affairs For a Debtor Engaged in Business.

The Plaintiffs Morrel, West and Saffa, Inc. and George Spencer & Associates, P.C., creditors of the Debtor, filed an adversary complaint March 4, 1991, objecting to the Debtor's discharge under 11 U.S.C. § 727(a)(4)(A) of the Bankruptcy Code. The Plaintiffs allege the Debtor knowingly and fraudulently failed to list certain tracts of real estate in which he had an interest

and failed to disclose required information in both his Statements of Affairs.

The Court finds that the instant action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) and that jurisdiction is vested under 28 U.S.C. § 1334.

In Schedule B–1, the Debtor is required to list all interests in real property. The Debtor failed to list his interest in two tracts of real property as follows:

1. The Cherokee Lake property, Delaware County, Oklahoma, held jointly with his mother and ex-wife.

2. Sunset Estate property, Delaware County, Oklahoma, held jointly with his sister.

The Debtor explained his mother paid the bills and the mortgage on the Cherokee Lake property. He considered it her property and he was only on the title for convenience. He testified the Sunset Estate property belonged to his sister, who paid all the bills and expenses associated therewith. He believed he had no ownership interest in the property and that it was not necessary to list it on his schedules. The legal title to both tracts of real estate, however, showed the Debtor as a joint owner.

In his Statement of Financial Affairs [1], the Debtor, on five different occasions, omitted material information. Paragraph 7 of the Statement of Affairs requires the Debtor to list all bank accounts maintained alone or together with any other person within two years of bankruptcy. The Debtor failed to list the following accounts.

1. Account number 50156363–7 at Sooner Federal Savings & Loan Association maintained jointly with his daughter.

2. Account number 16580113–2 at Sooner Federal Savings & Loan Association maintained with his mother, Dorothy Rangel. The Debtor's social security number appeared on said account.

3. Account number 50188185–8 at Sooner Federal Savings & Loan Association maintained by the Debtor alone. This account contained the Debtor's social security number.

4. Account number 50026406–7 at Sooner Federal Savings & Loan Association maintained with his ex-wife. This account contained the Debtor's social security number.

The Debtor explained he did not list the accounts because they actually belong to his mother or daughter and his name was on the accounts only for convenience or probate purposes.

Paragraph 14 of the Statement of Affairs requires the Debtor to list all transfers of property either absolute or for the purpose of security not in the ordinary course of business during the year prior to bankruptcy. The Debtor failed to list two mortgages given to his mother on his residence on March 29, 1990, and also a mortgage to his mother on the Villa Motel given on April 4, 1990.

The Debtor explained the first mortgage on his residence given to his mother was merely to replace a previous mortgage given in 1985 and he did not feel he had to list it. The second mortgage on the residence was given to secure a previous unsecured antecedent debt. The mortgage on the motel was given to his mother prior to his divorce because she wanted collateral for the money he owed her. No other explanation was given for omitting these conveyances from the Statements of Affairs.

Paragraph 18 of the Statement of Affairs requires the Debtor to list any losses suffered from fire and theft or gambling during the year prior to bankruptcy. It also asks if the loss was covered by insurance. The Debtor failed to disclose that the Villa Motel, in which he had an interest, burned on February 7, 1990, just a few weeks after he had obtained an insurance policy on it. The Debtor failed to disclose he made a claim on this policy in the amounts of $8,970.00, $3,580.00 and $4,715.00. The Debtor explained he did not disclose this information because the claims

---

**1.** The Court is referring to the two Statements of Affairs filed by the Debtor unless noted otherwise.

were denied by the insurance company and he felt they had no value.

Paragraph 11 of the Statement of Affairs asks whether any property was in the hands of a receiver. The Debtor failed to disclose the fact that a receiver had been appointed for the Villa Motel in which he had an interest. The Debtor testified he had no knowledge of the receiver. The evidence indicated, however, he had engaged an attorney to advise him in this matter.

Paragraph 1 of the Statement of Financial Affairs for Debtor Not Engaged in Business, requires the Debtor to list his residence during the six years prior to bankruptcy. The Debtor failed to disclose that he had resided in Las Vegas, Nevada for a short period of time in 1990. The Debtor testified that he never resided in Las Vegas but merely went there looking for employment and when none was found, he returned to Oklahoma. Evidence was introduced, however, that he filed a motion in the Oklahoma State courts to avoid service of process by claiming he no longer resided in Oklahoma.

## CONCLUSIONS OF LAW

The information asked of a debtor in filling out his bankruptcy schedules concerns his interests in property and his activities prior to bankruptcy. Full, complete and accurate information is required to give the creditors a clear picture of his financial condition at the time of bankruptcy and of his activities prior thereto. It is imperative the debtor answer these questions fully and truthfully. The debtor signs his bankruptcy petition, schedules and statement of affairs under penalty of perjury.

11 U.S.C. § 727(a)(4)(A) of the Bankruptcy Code states in part as follows:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

The Debtor concedes the above material information was intentionally not included in his Schedules or Statement of Affairs, but contends he had no intent to defraud his creditors. This Court rejects the Debtor's arguments. The Debtor is not to decide for himself the nature of his interest in property, the value of that property or the amount of his equity therein. Also, he is not to decide for himself which questions on the Statement of Affairs should be answered fully, completely and truthfully. The Debtor cannot omit information required of him simply because he believes or decides the property omitted has no value or the information is not necessary. This is for the creditors and the Court to decide.

In the case of *In re Calder*, 912 F.2d 454 (10th Cir.1990) the court addressed similar issues and stated as follows:

To trigger section 727(a)(4)(A), the false oath must relate to a material matter and must be made willfully with intent to defraud. *See* 4 *Collier on Bankruptcy*, ¶ 727.04[1] at 727–54 to –57 (15th ed. 1987)....

The omitted information concerned the existence and disposition of Calder's property. *See In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984) ("The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."). Calder has argued that he should not be denied a discharge of his debts because the undisclosed bank accounts and mineral interest were worthless assets. However, a "recalcitrant debtor may not escape a section 727(a)(4)(A) denial of a discharge by asserting that the admittedly omitted ... information concerned a worthless business relationship or holding; such a defense is specious." *Id.*

Calder's primary contention on appeal is that ... he did not act with a fraudulent intent....

The problem in ascertaining whether a debtor acted with fraudulent intent is difficult because, ordinarily, the debtor will be the only person able to testify directly concerning his intent and he is

unlikely to state that his intent was fraudulent. *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir.1987). Therefore, fraudulent intent may be deduced from the facts and circumstances of a case....

First, Calder, as the bankruptcy court noted, is an experienced attorney practicing exclusively in bankruptcy law. He should be aware that those who seek shelter of the bankruptcy code must provide "complete, truthful and reliable information." *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987). Furthermore, it is significant that there was not one but four separate omissions from Calder's Statement of Affairs and Schedule B–1....

In the case of *In re Lunday,* 100 B.R. 502 (Bankr.D.N.D.1989) the court in discussing the debtor's duties stated as follows:

Section 727(a)(3), (a)(4) and (a)(5) deal with the fundamental necessity in bankruptcy that statements and schedules filed pursuant to section 521 be accurate and reliable and that the debtor answer the trustee's first meeting inquiries in a thorough, non-evasive manner....

The purpose of these requirements is to insure that those interested in the case, in particular the trustee, have accurate information upon which they can rely without having to dig out the true facts or conduct examinations. *Matter of Hussan,* 56 B.R. 288 (Bankr.Minn. 1985); *In re MacDonald,* 50 B.R. 255 (Bankr.Mass.1985). A debtor has an uncompromising duty to disclose whatever ownership interest he holds in property. It is the debtor's role to simply consider the question carefully and answer it completely and accurately. *In re Gugliada,* 20 B.R. 524, 528 (Bankr.S.D.N.Y.1982). Even if the debtor thinks the assets are worthless he must nonetheless make full disclosure. *In re Alfonso,* 94 B.R. 777, 18 B.C.D. 1189 (Bankr.S.D.Fla.1988). In completing the schedules it is not for the debtor to pick and chose [sic] which questions to answer and which not to. Indeed, the debtor has no discretion—the schedules are to be complete, thorough and accurate in order that creditors may judge for themselves the nature of the debtor's estate. *In re Chalik, supra....*

In the case at bar the Debtors' original schedules are so devoid of accurate information as to be essentially worthless ...

Bankruptcy is a serious matter and when one chooses to avail himself of the benefits of Chapter 7 relief he assumes certain responsibilities, the foremost being to fully disclose his assets and to cooperate fully with the trustee. The manner in which the Debtors completed their schedules coupled with the testimony, both at the first meeting of creditors and at trial, convinces the court that in both instances they were outright and intentionally dishonest, intending thereby to hide nonexempt assets from the trustee and creditors.

See also *In re Chalik,* 748 F.2d 616 (11th Cir.1984) and *In re Mazzola,* 4 B.R. 179 (Bankr.D.Mass.1989).

Applying the above rules of law to the facts in the instant case, the Court finds the Debtor willfully omitted material information from his Schedules and Statement of Affairs with intent to defraud his creditors. The Debtor, at one time, held a real estate broker's license and had engaged in several other businesses. The Court concludes he was knowledgeable about transferring and owning real estate and giving mortgages. His explanations of the omissions and discrepancies are unbelievable and incredible for a man of his experience. He knowingly and deliberately omitted his interest in two tracts of real estate, four bank accounts, three mortgages, a fire loss, a receivership of the motel, and finally his residence in Las Vegas, Nevada. The omissions of the Debtor are numerous and involve basic information which must be disclosed. This Court holds he has made false oaths and is not entitled to a discharge in bankruptcy. A separate order will be entered.