In re Roger A. SAUSSER, Debtor.

Judy A. HOLLAND, Plaintiff,

v.

Roger A. SAUSSER, Defendant.

Bankruptcy No. 92–3048–8P7.
Adv. No. 92–545.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 28, 1993.

Alberto F. Gomez, Jr., Tampa, FL, for plaintiff.

Buddy D. Ford, Tampa, FL, for debtor, defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 7 liquidation case and the matter under consideration is an Objection filed by Judy A. Holland (Plaintiff) to the discharge of Roger A. Sausser (Debtor) pursuant to 11 U.S.C. § ·727(a)(4)(A), (a)(2)(A), and (a)(3).

In Count I, the Plaintiff alleges that the Debtor knowingly and fraudulently made false oaths in connection with this case by failing to disclose his interest in certain assets on his Schedules and Statement of Financial Affairs. The claim in Count II is based on the contention that the Debtor concealed and otherwise did not disclose certain of his assets with the intent to hinder, delay, and defraud his creditors. In Count III, the Plaintiff claims that the Debtor failed to maintain proper books and records documenting his financial conditions. The pertinent facts as established by the record and at the evidentiary hearing are as follows:

The Debtor filed his petition for relief pursuant to Chapter 7 of the Bankruptcy Code on March 6, 1992. Along with his Petition for Relief, the Debtor filed his Schedule of Assets and Liabilities and his Statement of Financial Affairs, which were signed by the Debtor under penalty of perjury.

It is undisputed that at all times relevant the Debtor owned a three bedroom, two bath cypress log home built in 1989. The log house has a total of 2,800 square feet and is built on a 2.2 acre lot. In addition to the log house, the Debtor also owns a 1978 double-wide Guerdon mobile home which was originally owned by the Debtor and Andrea Sausser, his deceased former wife, and now the Debtor is the sole owner of the mobile home.

The entire 2.2 acre parcel is divided by a chain link fence, separating it into distinct parcels, one for the log home and the other for the mobile home. Each carries a separate street address, a separate mailbox, and has separate electric meters.

The Debtor lived in the log house and listed the street address for this parcel as 13203 Blissfield Road on his Florida driver's license. The mobile home, which carries the address of 13215 Blissfield Road, was leased out by the Debtor, and was not used and is still not used as his residence.

The Debtor in his Schedule "A" (Real Property) listed the log home only as his residence, specifically its street address, but made no mention of the parcel on which the mobile home sits. Neither did the Debtor list his ownership interest in the mobile home or that he had leased the mobile home and received lease payments from the tenant, both pre and post petition.

In addition, on or about November of 1991, four months prior to filing, the Debtor listed the log home for sale, advertising it as a custom built cypress log home situated on 1.2 acres of land, with numerous amenities, including a pond, for a price of $220,000. No reference to the adjoining mobile home parcel was made in the ad.

According to the Debtor, by listing only the address of his log home residence, he presumed that this would constitute the entire 2.2 acre parcel, since the entire prop-

erty—both the mobile home parcel and the log home parcel—is covered by one tax bill and both are encumbered by a first and second mortgage. Therefore, the Debtor considered the entire 2.2 acres as his homestead and made the single disclosure on his schedules to include his interest in the mobile home, reportedly on the advice of his attorney.

In addition, it is undisputed that the Debtor did not disclose his ownership interest in an 18′ Orlando Star Clipper boat. The record reveals that on February 4, 1991, the Debtor's father transferred his ownership interest in the boat to the Debtor. The Debtor kept and is still keeping the boat at his log home resident. On March 4, 1991, or after the Debtor obtained title to the boat, he transferred the title back to his father. It is without dispute that the Debtor did not receive any consideration for this transfer and the boat was transferred admittedly for the sole purpose of keeping the boat out of any subsequent bankruptcy case. In this connection, it should be pointed out that the boat was listed as an amenity in the advertised offering of the Debtor's log home parcel for sale. According to the State of Florida title records, the title was issued in the Debtor's name as of February 4, 1991, and was still listed as such on the "corrected registration" issued in June 1991, some three months after the purported transfer back to his father. Further, the title records still lists the Debtor as the owner as of November 1992, some eight months after the filing of his petition for bankruptcy.

On February 20, 1992, the Debtor remarried, approximately two weeks prior to filing his voluntary Petition for relief. He testified at his deposition that he purchased his fiance's engagement ring and wedding band in January of 1992, paying a total of approximately $450 for both. However, in answering Question 7 on his Statement of Financial Affairs requesting the disclosure of gifts, the debtor answered the question in the negative.

Based on these facts, the Plaintiff, who is the ex-wife and a creditor of the Debtor, contends that the Debtor is not entitled to his discharge. The Plaintiff asserts that the failure to disclose assets constitutes false oath, and concealment of assets to hinder, delay and defraud creditors is sufficient to deny the Debtor his discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A). Further, the Plaintiff contends that the Debtor's failure to maintain proper books and records documenting his financial requirements is also grounds to deny the Debtor his discharge pursuant to § 727(a)(3). These subsections of § 727 read in pertinent part as follows:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of filing of the petition; or

.    .    .    .    .

(3) the debtor has concealed, destroyed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

.    .    .    .    .

■ The party objecting to the Debtor's discharge has the burden of proving by a mere preponderance of evidence that the Debtor's discharge should be denied. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Once a party objecting to the discharge has met the initial

burden of proving the objection by producing evidence establishing the basis for the objection, the ultimate burden of persuasion is placed on the Debtor. *In re Goblick,* 93 B.R. 771 (Bankr.M.D.Fla.1988); *In re Chalik,* 748 F.2d 616 (11th Cir.1984). To prevail on an objection to discharge pursuant to § 727(a)(4)(A), the Plaintiff must establish that the Debtor knowingly and fraudulently made the false oath and that the oath pertained to a material fact. *In re Ingersoll,* 124 B.R. 116 (Bankr.M.D.Fla. 1991). While it is difficult to prove that a false oath was knowingly made, an inference of such intent can be drawn from circumstances surrounding the debtor. *In re Sklarin,* 69 B.R. 949 (Bankr.S.D.Fla. 1987). Further, although the discharge may not be denied if the untruth was the result of a mistake or inadvertence, failure to schedule assets of significant value raises a presumption of actual intent. *In re Gonzalez,* 92 B.R. 960 (Bankr.S.D.Fla. 1988). The Debtor's omissions in his Statement of Financial Affairs and Schedules, when taken together, may constitute a pattern of demonstrating a reckless disregard for the truth. *In re Clawson,* 119 B.R. 851 (Bankr.M.D.Fla.1990). This reckless disregard for the truth is generally recognized as the equivalent to fraudulent intent. *In re Sapru,* 127 B.R. 306 (Bankr.E.D.N.Y. 1991).

■ It is clear that the Debtor omitted from his Statement of Financial Affairs numerous items, including ownership interest in the Guerdon double-wide mobile home, existence of the lease agreement which provided rental payments to the Debtor at the time of his filing, ownership interest in the 18′ Orlando Star Clipper boat (nor in the alternative, any disclosure of property held for another, in considering the Debtor's explanation of the ownership of the boat), and disclosure of gifts valued at $450.00 within 3 months prior to the commencement of the case. While the Debtor asserted that he did not list the mobile home or the mobile home parcel based on advice of counsel, it is without dispute that advice of counsel is not an adequate defense. *In re Clawson,* 119 B.R. 851 (Bankr.M.D.Fla.1990).

■ This record reveals a pattern of numerous omissions which in isolation could not be significant, however, in the total picture of this case certainly indicates a pattern of deceit and certainly which warrants the inference of reckless disregard for the truth. Therefore, the Court is satisfied that the Debtor did intentionally and fraudulently commit a false oath by failing to disclose the information required to be revealed on the Statement of Financial Affairs and the Schedules, which is sufficient to warrant a denial of discharge pursuant to § 727(a)(4)(A).

■ The Plaintiff also seeks denial of discharge pursuant to § 727(a)(2)(A) for fraudulent concealment or transfer of property of the Debtor. To prevail on this Count, the Plaintiff has the burden to establish by a preponderance of the evidence that the Debtor concealed or transferred property with the intent to hinder, delay, or defraud creditors. This intent may be based on circumstantial evidence or on reasonable inferences which may be drawn from the course of conduct. *In re Devers,* 759 F.2d 751 (9th Cir.1985).

■ The Debtor argues that his purported transfer of the boat to his father occurred a year and two days prior to filing his petition for bankruptcy, thus precluding the discharge exception for transfers that occur within one year of filing. However, concealment may be, and usually is, a continuing offense. Thus, where the initial action of concealment commenced outside of one year, if there is competent proof to establish a continuity of concealment which leads into the one-year period, the Plaintiff may establish a viable claim under § 727(a)(2). *In re Hall,* 126 B.R. 117 (Bankr.M.D.Fla.1991). Further, concealing property for purposes of § 727(a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership, thus effecting a sham transfer. *In re Olivier,* 819 F.2d 550 (5th Cir.1987).

While the Debtor purportedly transferred his ownership of the boat to has father outside of the one-year prior to the

bankruptcy filing time frame, he admittedly continued to retain possession and maintain the boat at his residence, use the boat whenever he desired, and even listed the boat as an amenity in the sale offering for his log home. In addition, the State of Florida title records reveal that title to the boat was listed in the Debtor's name on 3/4/91, a little more than a year before his filing, and on 11/17/92 as well, some eight months after his filing, with no record of any transfers in between. Also, the Debtor admitted that the transfer was "because of bankruptcy", which he clearly anticipated even beyond a year before actually filing.

Based on these actions by the debtor, the Court is satisfied that the record establishes the inference of actual intent by the Debtor to conceal or transfer property to hinder, delay, or defraud a creditor, such that the Debtor's discharge should be denied pursuant to § 727(a)(2)(A).

As to the Plaintiff's charge that the Debtor failed to maintain proper books and records, the Court is satisfied that the Plaintiff has not produced any material evidence that the Debtor failed to maintain proper books and records which would warrant denial of the discharge pursuant to 11 U.S.C. § 727(a)(3).

A separate Final Judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.